## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff | ) |
| | ) CIVIL ACTION FILE NO: |
| v. | ) |
| | ) |
| SHERIFF TIM POUNDS, in his individual | ) |
| capacity; OFFICER TERRENCE MARTIN, | ) |
| in his individual capacity; OFFICER KYLE | ) **DEMAND FOR JURY TRIAL** |
| TANNER, in his individual capacity; | ) |
| JAYAVIERRE JOHNSON, in his | ) |
| individual capacity; LIEUTENANT DUKES, | ) |
| in his individual capacity; John Does 1-100, in | ) |
| their individual capacities, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES

Plaintiff Jane Doe[1] files this Complaint for Damages against Defendants

Sheriff Tim Pounds, in his individual capacity; Officer Terrence Martin, in his

individual capacity; Officer Kyle Tanner, in his individual capacity; Jayavierre

Johnson, in his individual capacity; Lieutenant Dukes, in his individual capacity;

and John Does 1-100, in their individual capacities; respectfully showing the Court

---

[1] Plaintiff seeks to proceed under a pseudonym due to the sensitive nature of the case and the potential for harm and embarrassment. Consistent with other federal courts' treatment of party names in highly sensitive cases that involve sexual assault, and to protect the privacy, safety, and dignity of Plaintiff and her family, Plaintiff seeks to proceed anonymously in this matter. See Doe v. Bondi, Civil Action No. 1:25-cv-01998-VMC, 2025 U.S. Dist. LEXIS 78892 (N.D. Ga. Apr. 18, 2025). Plaintiff will seek appropriate relief from the Court to continue to proceed in this fashion and to otherwise protect her anonymity throughout the instant litigation.

as follows:

## **INTRODUCTION**

1.

Plaintiff was an inmate at Douglas County Jail from March 2024 to August 2024.  Plaintiff was housed there as a pre-trial detainee as she fought a frivolous criminal case alleging one count of aggravated stalking.  The case was summarily dismissed, but not before Plaintiff suffered unimaginable humiliation, harassment, sexual abuse and torture, at the hands of several corrections officers.

2.

Prior to her incarceration, Plaintiff was on track to pursue a career in chiropractic care.  Plaintiff successfully completed her Doctor of Chiropractic degree at Life University in 2023.  Plaintiff was already working in the medical field and preparing to take the national exams for her state license.  Plaintiff's life took a turn when she was bombarded with frivolous allegations, such as the one underlying her incarceration at the Douglas County Jail.  Since her release, Plaintiff has been unable to work, as she heals from the abuse she suffered during her incarceration.

3.

Plaintiff brings this federal constitutional case against the Defendants for committing acts under color of law that deprived her of her rights under the Constitution and the laws of the State of Georgia by allowing unlawful and

excessive force to be use against Plaintiff while she was an inmate at Douglas County Jail.

4.

While she was incarcerated, Plaintiff was placed on suicide watch and housed in the medical unit at the Douglas County Jail. All of the constitutional violations complained of herein, occurred while she was housed in the medical unit. Plaintiff made several complaints about the humiliation, harassment, sexual abuse and torture she experienced at the hands of several corrections officers, but no action was taken. Upon information and belief, no reports were authored documenting Plaintiff's complaints.

5.

Defendant Jayavierre Johnson was subsequently terminated and charged with four counts of Sexual Contact by Employee or Agent in the First Degree, in connection with his sexually abusive conduct against Plaintiff.

6.

Due to the egregious conduct of the Defendants underlying this action, Plaintiff has suffered severe physical, mental and emotional injuries.

## PARTIES AND JURISDICTION

7.

Plaintiff Jane Doe ("Plaintiff") is a natural person and adult resident of the State of Georgia. Plaintiff submits herself to the jurisdiction of this Court by filing this Complaint.

8.

Defendant Sheriff Tim Pounds ("Pounds") is a resident of Georgia.  At all times relevant hereto, Defendant Pounds was acting under color of state law in his capacity as a corrections officer employed by the Douglas County Sheriff's Office. Defendant Pounds is sued in his individual capacity.  Defendant Pounds may be served with the summons and complaint at Douglas County Sheriff's Office, 8470 Earl D. Lee Blvd., Douglasville, GA  30134, or wherever he may be found.

9.

Defendant Officer Terrence Martin ("Martin") is a resident of Georgia. At all times relevant hereto, Defendant Martin was acting under color of state law in his capacity as a corrections officer employed by the Douglas County Sheriff's Office. Defendant Martin is sued in his individual capacity.   Defendant Martin may be served with the summons and complaint at Douglas County Sheriff's Office, 8470 Earl D. Lee Blvd., Douglasville, GA  30134, or wherever he may be found.

10.

Defendant Officer Kyle Tanner ("Tanner") is a resident of Georgia. At all times relevant hereto, Defendant Tanner was acting under color of state law in his capacity as a corrections officer employed by the Douglas County Sheriff's Office. Defendant Tanner is sued in his individual capacity.   Defendant Tanner may be served with the summons and complaint at Douglas County Sheriff's Office, 8470 Earl D. Lee Blvd., Douglasville, GA  30134, or wherever he may be found.

11.

Defendant Jayavierre Johnson ("Johnson") is a resident of Georgia. At all times relevant hereto, Defendant Johnson was acting under color of state law in his capacity as a corrections officer employed by the Douglas County Sheriff's Office. Defendant Johnson is sued in his individual capacity.   Defendant Johnson may be served with the summons and complaint at 32 Oakview Drive, Carrolton, Georgia 30116, or wherever he may be found.

12.

Defendant Lieutenant Dukes ("Dukes") is a resident of Georgia.  At all times relevant hereto, Defendant Dukes was acting under color of state law in his capacity as a corrections officer employed by the Douglas County Sheriff's Office. Defendant Dukes is sued in his individual capacity.  Defendant Dukes may be served with the summons and complaint at Douglas County Sheriff's Office, 8470 Earl D. Lee Blvd., Douglasville, GA  30134, or wherever he may be found.

13.

Defendants John Does 1-100 are employees of the Douglas County Sheriff's Office, whose identities are currently unknown to Plaintiff.   Defendants John Does 1-100 were, at all times material to this suit, employed at the Douglas County Jail. Each of the acts complained of herein arises from the conduct of the John Doe employees while acting under color of state law, committed within the scope of their employment and with the authority of the Douglas County Sheriff's Office. The John Does employees may be served with the summons and complaint at their place of employment at Douglas County Sheriff's Office, 8470 Earl D. Lee Blvd., Douglasville, GA  30134, or wherever they may be found.

## JURISDICTION AND VENUE

14.

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under the U.S. Constitution, which are brought both directly and under 42 U.S.C. § 1983 ("Section 1983").

15.

Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including assault and battery, intentional infliction of emotional distress, and negligent hiring, retention, training and supervision, and attorney fees and costs.

16.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since Defendants reside or resided in this district and the events or omissions giving rise to the claim occurred in this district.

## FACTS

17.

From in or about March 2024 to August 2024, Plaintiff was a pre-trial detainee of the Douglas County Jail ("Jail").

18.

At the time of her incarceration, Plaintiff was charged with one count of Aggravated Stalking in the Douglas County Superior Court.

19.

Shortly after Plaintiff was incarcerated at the Jail, she was placed on suicide watch.

20.

Inmates that are placed on suicide watch are housed in the medical unit at the Jail.

21.

Plaintiff remained in the medical unit until she was released from the Jail, due to her vulnerable mental condition.

22.

After being moved to the medical unit, Plaintiff was immediately subjected to ongoing abuse, harassment, and torture at the hands of Defendant Martin, Defendant Tanner and various other male corrections officers[2] at the Jail.

23.

By way of example, Defendant Martin, Defendant Tanner and various other male corrections officers would stand in the doorway of Plaintiff's cell for the sole purpose of watching her undress and use the bathroom.

24.

When Plaintiff expressed her concern and discomfort to Defendant Martin, Defendant Tanner and various other male corrections officers about watching her use the bathroom and undress, they taunted and cursed at her.

25.

Even worse, Defendant Martin, Defendant Tanner and various other male corrections officers regularly hurled sexually harassing vitriol at Plaintiff.

26.

---

[2] The "various other male corrections officers" are identified as John Does 1-100 in the caption.  Their identities are unknown to Plaintiff.

Defendant Martin, Defendant Tanner and the other male corrections officers never disputed Plaintiff's claims that they were visiting her cell for the sole purpose of sexually harassing her, rather than to check on her well-being.

27.

Throughout her period of incarceration at the Jail, Defendant Martin, Defendant Tanner and the other male corrections officers continued to engage in improper conduct with the goal of humiliating, harassing and torturing Plaintiff.

28.

On other occasions, Defendant Martin, Defendant Tanner and the other male corrections officers forced Plaintiff to strip naked and refused to provide her any clothing.

29.

In or about May 2024, Plaintiff was subjected to a particularly egregious level of torture, humiliation and harassment at the hands of Defendant Martin and Defendant Tanner.

30.

On this occasion, Defendant Martin and Defendant Tanner stood in the doorway of Plaintiff's cell for a few minutes before entering it.

31.

At the time, Plaintiff was using a Jail issued blanket as clothing to cover her body, due to the fact that all of her clothing had been previously removed from her possession by a John Doe corrections officer.

32.

When Defendant Martin and Defendant Tanner entered Plaintiff's cell, they demanded that she give them the blanket that she was wearing.

33.

Understandably, Plaintiff refused to hand over the blanket, unless Defendant Martin and/or Defendant Tanner agreed to provide her clothing to wear.

34.

Defendant Martin and Defendant Tanner yelled at her several times to give them the blanket and aggressively approached Plaintiff.

35.

In response, Plaintiff retreated further into her cell and begged Defendant Martin and Defendant Tanner to stop harassing her and provide her clothing.

36.

In an attempt to reason with them and further explain why she needed clothing, Plaintiff told Defendant Martin and Defendant Tanner that the blanket doubled as a bed because she slept on the floor during her time on suicide watch.

37.

Despite her pleads for clothing and for the harassment to stop, Defendant Martin and Defendant Tanner were unsympathetic and their conduct escalated into physical violence.

38.

Because Plaintiff refused to release the blanket, Defendant Martin attacked her by grabbing the back of her neck, slamming her onto the cement bed in the cell and ultimately ripped the blanket from her possession.

39.

As a result of Defendant Martin's violent actions, Plaintiff was left in her cell crying, naked and with blood dripping out the back of her head.

40.

Plaintiff begged Defendant Martin and Defendant Tanner to take her to get her head injury looked at by medical staff.

41.

Defendant Martin and Defendant Tanner refused Plaintiff's request for medical care.

42.

Defendant Martin and Defendant Tanner had a duty to provide Plaintiff medical care or arrange for Plaintiff to receive medical care for her head injury.

43.

Defendant Martin and Defendant Tanner violated their duty to Plaintiff when they refused to provide Plaintiff medical care or arrange for her to receive medical care for her head injury.

44.

Following the attack by Defendant Martin and Defendant Tanner, Defendant Dukes stopped by Plaintiff's cell and noticed that she was nude.

45.

Defendant Dukes asked Plaintiff where her clothes were.

46.

Through her tears, Plaintiff explained that a male corrections officer had previously taken away her jail-issued gown, and thus she was forced to use the blanket to cover herself.

47.

Plaintiff further informed Defendant Dukes of the violent encounter with Defendant Martin and Defendant Tanner, which left her with no blanket.

48.

Lastly, Plaintiff informed Defendant Dukes that due to the actions of several male corrections officers at the Jail, she was forced to use the Jail-issued blanket as both, clothing and bedding.

49.

In response, Defendant Dukes informed Plaintiff that Defendant Martin, Defendant Tanner and the other corrections officers were "not supposed to do that."

50.

Defendant Dukes provided Plaintiff a wrap to use as a cover temporarily.

51.

Defendant Dukes then took Plaintiff to a different room, provided her a new uniform and blanket, and allowed her to get dressed in private.

52.

Although Defendant Dukes provided Plaintiff a uniform and blanket following the attack by Defendant Martin, she would only have access to these items temporarily, as male corrections officers would continue to take them from her throughout her incarceration.

53.

Even though Defendant Dukes provided Plaintiff some dignity by issuing her a new uniform and blanket, he did not arrange for her to get medical care for her open head wound, caused by Defendant Martin's attack.

54.

Unfortunately, it would be about a week before Plaintiff received medical care for her head wound.

55.

In the days that followed, Plaintiff suffered frequent migraines and dizziness, due to the head wound.  Plaintiff was ultimately left with a permanent scar on her head, due to Defendant Martin's vicious attack upon her and the failure of the corrections officers to arrange for her to receive medical care.

56.

Based on her medical knowledge, experience and the symptoms that she experienced, Plaintiff believes that Defendant Martin's attack caused her to suffer a concussion.

57.

At all times relevant, Defendant Dukes held a supervisory position at the Jail.

58.

Defendant Dukes had a duty to provide Plaintiff medical care or arrange for Plaintiff to receive medical care for her head injury.

59.

Defendant Dukes violated his duty to Plaintiff when he failed to provide Plaintiff medical care or arrange for her to receive medical care for her head injury.

60.

Defendant Dukes, also, had an obligation to report the incidents conveyed to him by Plaintiff.

61.

Defendant Dukes had an obligation to take steps to address, intervene and stop the ongoing abuse that Plaintiff was subjected to.

62.

Defendant Duke knowingly failed to document the unlawful use of force, report the unlawful use of force, nor did he document or report the injuries suffered by Plaintiff due to Defendant Martin's attack.

63.

Because Defendant Dukes was derelict in his duties, the abuse suffered by Plaintiff, not only continued, but escalated over time.

64.

In addition to depriving her of clothing, Defendant Martin, Defendant Tanner, and various male corrections officers exacerbated Plaintiff's abuse, harassment and torture by depriving her of other basic necessities and privileges.

65.

Specifically, Plaintiff was deprived of eating utensils for her food, phone calls to her family, access to showers, and sanitary products for her menstruation.

66.

To make matters worse, the male corrections officers enjoyed letting Plaintiff know that they took pleasure in abusing, harassing and tormenting her.

67.

After denying Plaintiff phone privileges, Defendant Tanner, Defendant Martin and other male corrections officers would taunt her by laughing and making objectively offensive statements to her.

68.

Defendant Tanner's taunting included statements, such as "you're mad because you can't use the phone;" and "you're mad 'cause you can't call your kids."

69.

On one occasion, Defendant Tanner called Plaintiff a "fucking bitch."

70.

In addition to the above, Defendant Tanner and various male corrections officers often call her derogatory names and stated that she was unfit mother.

71.

Every time Plaintiff reacted to the abuse, taunting and harassment by Defendant Tanner, Defendant Martin and other male corrections officers, they would threatened to "put more charges on [her]."

72.

Defendant Tanner, Defendant Martin and other male corrections officers stated that the additional charges that they would "put on her" would keep her in jail for life.

73.

Similarly, if Plaintiff failed to comply with an unlawful order – such as, removing all of her clothing, without a valid reason to do so – Plaintiff was threatened with physical abuse and more criminal charges being "put on [her]" by Defendant Tanner, Defendant Martin or other male corrections officers.

74.

In fear of the potential consequences, Plaintiff complied to the best of her ability, with the illegal orders of Defendant Tanner, Defendant Martin or other male corrections officers.

75.

Plaintiff reasonably feared, that in the best case the consequence for not complying with their orders would be a vicious beating and having to fight more frivolous criminal charges. In this best case scenario, she would survive to see her family again on the other side of the Jail.

76.

Plaintiff also reasonably feared the worse case scenario, where she would not survive the physical abuse from the male corrections officers or worse have a

frivolous criminal charge lodged against her which would result in a lengthy jail sentence up to life.

### 77.

Due to the ongoing torture, harassment and physical abuse, Plaintiff was in a constant state of terror and extreme fear throughout her time at the Jail.

### 78.

On the days where she was allowed to exercise her phone privileges, Plaintiff would usually contact her mother and minor children.

### 79.

It is well known that maintaining healthy relationships with their outside family members through communication and visitation tend to have a positive impact on inmates, both during their incarceration and after their release.[3]

### 80.

Specifically, regular contact with family members who have healthy relationships with their incarcerated loved ones tends to result in lower recidivism rates and higher success in re-entering society.[4]

### 81.

---

[3] Folk, J. B., Stuewig, J., Mashek, D., Tangney, J. P., & Grossmann, J. (2019) Behind Bars but Connected to Family: Evidence for the Benefits of Family Contact During Incarceration. *Journal of Family Psychology* ,453–464.
[4] Id.

During a phone call with her mother, Plaintiff informed her of the ongoing harassment, abuse and torture that she was experiencing at the Jail.

82.

Upon learning of the mistreatment her daughter was experiencing, Plaintiff's mother contacted the Jail to make a complaint.

83.

Following the complaint from Plaintiff's mother, Plaintiff was summoned to Defendant Pounds' office for a meeting.

84.

At all relevant times, Defendant Pounds headed the Douglas County Sheriff's Office, which included, *inter alia*, overseeing the operations of the Jail and the treatment of its inmates.  See O.C.G.A. §42-4-4.

85.

At the meeting, Plaintiff was asked to provide her account of the horrific torture, harassment and physical abuse she was experiencing at the hands of his corrections officers.

86.

Plaintiff detailed the experience she had with Defendant Martin and Defendant Tanner where they stripped her naked, caused her to suffer a serious head injury and refused to take her to medical care.

87.

Plaintiff discussed the derogatory and harassing language hurled at her by Defendant Tanner, Defendant Martin and other male corrections officers.

88.

Plaintiff spoke about the challenges that she faced in getting access to basic necessities and being denied phone privileges.

89.

At the conclusion of the meeting, promises were made to Plaintiff that action would be taken against the correction officers who engaged in the misconduct she described.

90.

Unfortunately, despite the promises, no action was ever taken.

91.

At all times relevant, Defendant Pounds held a supervisory position at the Jail.

92.

Defendant Pounds had an obligation to report the incidents conveyed to him by Plaintiff.

93.

Defendant Pounds had an obligation to take steps to address, intervene and stop the ongoing abuse that Plaintiff was subjected to.

94.

Defendant Pounds knowingly failed to document the unlawful use of force, report the unlawful use of force, nor did he document or report the injuries suffered by Plaintiff due to Defendant Martin's attack.

95.

Defendant Pounds was derelict in his duties owed to Plaintiff.

96.

Just as she had experienced after her encounter with Defendant Dukes, the torture toward Plaintiff continued to escalate following her meeting with Defendant Pounds.

97.

During her incarceration at the Jail, Plaintiff would often come into contact with Defendant Johnson.

98.

Defendant Johnson's job responsibilities at the Jail included assisting inmates with their commissary accounts and other financial matters.

99.

When Plaintiff first encountered Defendant Johnson, he was a breath of fresh air, due to the stark difference between the way he treated her from the treatment she received from corrections officers like Defendant Martin and Defendant Tanner.

100.

Defendant Johnson would sometimes stop other corrections officers from yelling or threatening Plaintiff, when he witnessed it.

101.

On days when he intervened or stopped another officer from mistreating Plaintiff, Defendant Johnson would make it a point to regularly check on her for the remaining part of the day.

102.

Defendant Johnson led Plaintiff to believe that he was assisting her by bringing her complaints of assault, abuse, and harassment to senior officials at the Jail, who would hopefully do something to stop the torture.

103.

Unfortunately, Plaintiff began to trust Defendant Johnson.

104.

Once Defendant Johnson gained her trust, he began flirting with her and demanding sexual favors.

105.

Once Defendant Johnson started his sexually harassing conduct, Plaintiff
played along because she feared what would happen if she did not.

106.

On or about August 3, 2024, Defendant Johnson engaged in his first sexual
assault against Plaintiff.

107.

On that day, Defendant Johnson saw Plaintiff outside of her cell.

108.

Defendant Johnson took Plaintiff to an attorney booth and forced her to
cover the surveillance cameras with toilet paper.

109.

Plaintiff covered the cameras with toilet paper as ordered.

110.

Once the cameras were covered, Defendant Johnson pulled out his penis and
forced Plaintiff to perform oral sex on him.

111.

Two days later Defendant Johnson approached Plaintiff again and demanded
penis-vagina intercourse, this time in her cell.

112.

Prior to sexually assaulting her, Defendant Johnson demanded that she cover the cameras in her cell.

### 113.

Plaintiff covered the cameras with wet tissue, as ordered by Defendant Johnson.

### 114.

Once the surveillance camera was fully obstructed by the tissue, Defendant Johnson then forcibly penetrates her.

### 115.

Defendant Johnson ordered Plaintiff to perform oral sex on him several more times until she was ultimately released from the custody of Jail.

### 116.

Defendant Johnson forcibly penetrated Plaintiff several more times until she was ultimately released from the custody of Jail.

### 117.

The criminal case which was responsible for Plaintiff's pre-trial detention at the Jail was dismissed in its entirety in August 2024.

### 118.

Plaintiff was released from the Jail's custody after her criminal case was dismissed.

119.

Upon being released from the Jail, Plaintiff was transferred to Fulton County Jail located in Atlanta, Georgia on an unrelated matter.

120.

Shortly after arriving at Fulton County Jail, Plaintiff learned that she had been impregnated by Defendant Johnson.

121.

Due to the stress of the situation, Plaintiff suffered a miscarriage during her time in Fulton County Jail.

122.

While she was in Fulton County Jail, Defendant Johnson continued to contact Plaintiff.

123.

While she was in Fulton County Jail, Defendant Johnson demanded that Plaintiff continue to contact him while she was in custody.

124.

Plaintiff complied with Defendant Johnson's demands as she feared what would happen if she did not.

125.

Although Plaintiff did not suffer abuse at the Fulton County Jail by its corrections officers, she did not know what influence, if any, Defendant Johnson had with the corrections officers at the Fulton County Jail.

126.

Plaintiff complied with Defendant Johnson's demands, as she did not want to risk the possibility of reliving the nightmare that she experienced at the Jail.

127.

Plaintiff and Defendant Johnson spoke often during her time at the Fulton County Jail over the phone.

128.

Defendant Johnson used these communications with Plaintiff as an opportunity to further abuse and manipulate her.

129.

Upon information and belief, an investigation was opened by law enforcement regarding Defendant Johnson's conduct toward Plaintiff, in or about September 2024.

130.

In or about December 2024, Defendant Johnson was terminated from the Jail and arrested for sexual assault against Plaintiff.

131.

When Defendant Johnson first encountered Plaintiff, she was an inmate at the Jail.

132.

When Defendant Johnson first encountered Plaintiff, he was a corrections officer and staff member of the Jail.

133.

At no time between March 2024 and August 2024 did Plaintiff cease to be an inmate at the Jail.

134.

At no time between March 2024 and August 2024 did Defendant Johnson cease to be a corrections officer and staff member at the Jail.

135.

An inmate in Georgia cannot legally consent to sexual contact with a correctional officer. See O.C.G.A. §16-6-5.1; Bell v. State, 352 Ga. App. 802 (2019).

136.

Under Georgia law, Plaintiff was deemed legally incapable of giving consent to sexual contact with Defendant Johnson who had supervisory authority over her.

137.

The willingness of the inmate to participate in such contact is not a defense to charges of sexual assault.

138.

When Defendant Johnson engaged in the multiple sexual contacts against Plaintiff at the Jail, Plaintiff could not and did not consent.

139.

The actions of Defendant Martin, Defendant Tanner, and Defendant Johnson against Plaintiff were particularly egregious, not only because she was an inmate, but one who was experiencing mental health challenges.

140.

These corrections officers knew that Plaintiff was experiencing a mental health crisis when they chose to engage in tortuous acts against her.

141.

These corrections officers were in a position of trust and tasked with protecting inmates like Plaintiff.

142.

Instead of carrying out their duties, they took advantage of Plaintiff. They humiliated her. They harassed her. They abused her. They tortured her.

143.

When Plaintiff reported the abusive conduct and mistreatment to Defendant Dukes and Defendant Pounds, no action was taken.

144.

When Defendant Johnson witnessed the same abusive conduct and mistreatment of Plaintiff, he failed to report it.

145.

When Plaintiff's mother made a formal complaint, no action was taken.

146.

Instead, Defendant Dukes and Defendant Pounds disregarded the egregious conduct directed toward Plaintiff and continued business as usual.

147.

The Defendants caused and allowed the mistreatment to not only continue, but to escalate during her incarceration.

148.

The actions of Defendant Martin, Defendant Tanner, Defendant Johnson and the John Doe corrections officers amounted to excessive and/or unnecessary use of force.  Said excessive and unnecessary use of force is objectively unreasonable as no reasonable corrections officer given the same or similar circumstances would have initiated such conduct against an inmate.

149.

The excessive and unnecessary force committed against Plaintiff by Defendant Martin, Defendant Tanner, Defendant Johnson and the John Doe corrections officers was not performed in good faith to maintain or restore discipline, but performed maliciously, intentionally, and for the very purpose of torturing Plaintiff.

150.

At all pertinent times, Defendant Duke and Defendant Pounds authorized and ratified the wrongful and tortious acts and/or omissions of the Jail's corrections officers.

## COUNT I
## VIOLATIONS OF 42. U.S.C. §1983
## (Cruel and Unusual Punishment Against All Defendants)

151.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 150 of this Complaint.

152.

42 U.S.C. § 1983 states in relevant part that:

"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress….."

153.

Plaintiff in this action is a citizen of the United States and the Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

154.

Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as corrections officers for the Douglas County Sheriff's Office and their acts or omissions were conducted within the scope of their official duties or employment.

155.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Fourteenth Amendment.

156.

When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.

157.

The Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Plaintiff's Fourteenth Amendment rights.

158.

The Defendants' actions, as described herein, were also malicious and involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

159.

Defendants did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe injuries.

160.

The acts or omissions of Defendants were moving forces behind Plaintiff's injuries.

161.

The acts or omissions of Defendants' as described herein intentionally deprived Plaintiff of her constitutional rights and caused her other damages.

162.

Defendants are not entitled to qualified immunity for their actions.

163.

On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of her injuries, in amounts to be ascertained in trial.

164.

As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual injuries, severe emotional distress, and other damages entitling her to compensatory and special damages, in amounts to be determined at trial.

**COUNT II**
**VIOLATIONS OF 42. U.S.C. §1983**
**(Failure to Provide Medical Treatment for Illness and Injuries Against Defendant Martin, Defendant Tanner and Defendant Dukes)**

165.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 164 of this Complaint.

166.

"Pretrial detainees and other prisoners have the right to receive medical treatment for illness and injuries." Gish v. Thomas, 516 F.3d 952, 954, 21 Fla. L. Weekly Fed. C 383 (11th Cir. 2008).

167.

"A prison official may be held liable for failing to prevent harm to a prisoner if he is deliberately indifferent to the prisoner's health or safety." Gish v. Thomas, 516 F.3d 952, 954, 21 Fla. L. Weekly Fed. C 383 (11th Cir. 2008).

168.

Defendant Tanner was present at the scene when Defendant Martin grabbed the back of Plaintiff's neck, slammed her onto the cement bed in the cell and ultimately ripped the blanket from her possession.

169.

Defendant Martin's attack on Plaintiff showed a deliberate indifference to the risk of serious injury.

170.

Defendant Dukes was present at the scene immediately following the attack upon Plaintiff by Defendant Martin.

171.

Defendant Martin, Defendant Tanner and Defendant Dukes were all aware of Plaintiff's head injury, as it was clearly visible. Plaintiff, also, complained about the injury and asked for medical care.

172.

Defendant Martin, Defendant Tanner and Defendant Dukes all had a duty to provide or arrange medical care to Plaintiff for her head injury.

173.

Defendant Martin, Defendant Tanner and Defendant Dukes all showed a deliberate indifference to the risk of serious injury to Plaintiff.

174.

Defendant Tanner and Defendant Dukes all failed to take reasonable steps to protect Plaintiff from Defendant Martin's constitutional violations.

175.

Defendant Martin, Defendant Tanner and Defendant Dukes all violated Plaintiff's rights when they failed to provide or arrange medical treatment for her head injury.

176.

Plaintiff's head injury led to frequent migraines, dizziness, and a permanent scar due to Defendant Martin, Defendant Tanner and Defendant Dukes failure to provide or arrange immediate medical treatment for her head injury.

177.

Upon information and belief, Plaintiff suffered from a concussion as a direct result of Defendant Martin's attack.

178.

Defendant Martin, Defendant Tanner and Defendant Dukes actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Plaintiff's Fourteenth Amendment rights.

179.

Defendant Martin, Defendant Tanner and Defendant Dukes actions, as described herein, were also malicious and involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

180.

Defendant Martin, Defendant Tanner and Defendant Dukes are not entitled to qualified immunity for their actions.

181.

As a proximate result of Defendant Martin, Defendant Tanner and Defendant Dukes unlawful conduct, Plaintiff has suffered emotional injuries, and other damages and losses entitling her to compensatory and special damages, in amounts to be determined at trial.

182.

As a further result of the Defendant Martin, Defendant Tanner and Defendant Dukes unlawful conduct, Plaintiff has incurred special damages and may continue to incur further other special damages related expenses, in amounts to be established at trial.

183.

On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of her injuries, in amounts to be ascertained in trial.

184.

Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, prejudgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

185.

In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendant under 42 U.S.C. §1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**COUNT III**
**VIOLATIONS OF 42. U.S.C. §1983**
**(Failure to Intervene Against All Defendants)**

186.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 185 of this Complaint.

187.

Prison corrections officers can be held directly liable for constitutional violations of an inmate in the following ways:

a) When the corrections officer is present at the scene, but fails to take reasonable steps to protect the inmate of another corrections officer's use of excessive force.

b) When the corrections officer fails to report a constitutional violation that they have actual knowledge of, even if it did not occur in their presence.

c) When the correction officer establishes or utilizes a policy or custom
established that results in a deliberate indifference to an inmate's
constitutional rights.

See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

188.

Defendant Tanner, Defendant Martin, Defendant Johnson and Defendant
John Does were present at the scene when Plaintiff was stripped of her jail-issued
clothing, leaving her nude in her cell.

189.

Defendant Tanner, Defendant Martin, Defendant Johnson and Defendant
John Does were present at the scene when Plaintiff was deprived of her basic
necessities and privileges, including but not limited to: calls to her family, access
to showers, and sanitary products for her menstruation, without legal justification.

190.

Defendant Tanner, Defendant Martin, Defendant Johnson and Defendant
John Does were present at the scene when Plaintiff was taunted and subjected to
objectively offensive statements and vitriol.

191.

Defendant Tanner, Defendant Martin, Defendant Johnson and Defendant
John Does were present at the scene when Plaintiff was threatened with more

criminal charges being lodged against her if she failed to comply with illegal orders.

192.

Defendant Tanner was present at the scene when Defendant Martin grabbed the back of Plaintiff's neck, slammed her onto the cement bed in the cell and ultimately ripped the blanket from her possession leaving her nude.

193.

Defendant Dukes had actual knowledge of Defendant John Does taking away Plaintiff's jail-issued gown and forcing her to be nude in her cell, without legal justification.

194.

Defendant Dukes had actual knowledge of Defendant John Does taking away Plaintiff jail-issued gown and forcing her use a jail-issued blanket to cover herself, without legal justification.

195.

Defendant Dukes had actual knowledge of Defendant Martin's attack on Plaintiff, without legal justification, and the injuries she sustained to her head.

196.

Defendant Pounds, in his capacity as a Sherriff, was responsible for establishing and implementing the policies and customs of the Jail.

197.

Defendant Tanner, Defendant Martin, Defendant Johnson, Defendant Pounds, Defendant Dukes, and Defendant John Does were responsible for utilizing the policies and customs of the Jail.

198.

Defendant Pounds had actual knowledge of Defendant Tanner, Defendant Martin, and Defendant John Does stripping Plaintiff of her jail-issued clothing, leaving her nude in her cell, without legal justification.

199.

Defendant Pounds had actual knowledge of Plaintiff being deprived of her basic necessities and privileges, including but not limited to: calls to her family, access to showers, and sanitary products for her menstruation, without legal justification.

200.

Defendant Pounds had actual knowledge of Plaintiff being subjected to taunting and objectively offensive statements and vitriol.

201.

Defendant Pounds had actual knowledge of Plaintiff being threatened with more criminal charges being lodged against her if she failed to comply with illegal orders of his corrections officers.

202.

Defendant Pounds had actual knowledge of Plaintiff being attacked by Defendant Martin in her cell, without legal justification, and the injuries that she sustained.

203.

Defendant Tanner, Defendant Martin, Defendant Johnson, Defendant Pounds, Defendant Dukes, and Defendant John Does failed to take reasonable steps to protect Plaintiff from constitutional violations.

204.

Defendant Tanner, Defendant Martin, Defendant Johnson, Defendant Pounds, Defendant Dukes, and Defendant John Does, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated Plaintiff's Fourteenth Amendment rights.

205.

Defendant Tanner, Defendant Martin, Defendant Johnson, Defendant Pounds, Defendant Dukes, and Defendant John Does, as described herein, were malicious and involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

206.

Defendant Tanner, Defendant Martin, Defendant Johnson, Defendant Pounds, Defendant Dukes, and Defendant John Does are not entitled to qualified immunity for their actions.

207.

As a proximate result of Defendant Tanner, Defendant Martin, Defendant Johnson, Defendant Pounds, Defendant Dukes, and Defendant John Does unlawful conduct, Plaintiff has suffered emotional injuries, and other damages and losses entitling her to compensatory and special damages, in amounts to be determined at trial.

208.

As a further result of Defendant Tanner, Defendant Martin, Defendant Johnson, Defendant Pounds, Defendant Dukes, and Defendant John Does unlawful conduct, Plaintiff has incurred special damages and may continue to incur further other special damages related expenses, in amounts to be established at trial.

209.

On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of her injuries, in amounts to be ascertained in trial.

210.

Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, prejudgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

211.

In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendant under 42 U.S.C. §1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### COUNT IV
### VIOLATIONS OF O.C.G.A. §§51-1-13 & 51-1-14
### (Assault And Battery Against Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does 1-100)

212.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 211 of this Complaint.

213.

Defendant Martin, Defendant Tanner, and Defendant John Does were verbally abusive to Plaintiff and intended to cause Plaintiff to fear for her safety.

214.

By forcibly removing Plaintiff's jail-issued clothing, Defendant Martin, Defendant Tanner, and Defendant John Does intentionally and violently injured Plaintiff.

215.

By grabbing the back of Plaintiff neck, slamming her onto the cement bed and ultimately ripping a blanket from her possession, Defendant Martin intentionally and violently injured Plaintiff.

216.

By forcing Plaintiff to perform oral sex on him, Defendant Johnson intentionally and violently injured Plaintiff.

217.

By forcibly penetrating Plaintiff with his penis, Defendant Johnson intentionally and violently injured Plaintiff.

218.

Based on their actions, Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does are liable to Plaintiff for the torts of assault and battery.

219.

Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does actions demonstrated willful misconduct, malice, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to their consequence.

220.

Punitive damages are appropriate against Defendant Martin, Defendant

Tanner, Defendant Johnson and Defendant John Does.

221.

Considering the information known to Defendant Martin, Defendant Tanner,

Defendant Johnson and Defendant John Does regarding Plaintiff's mental health

status and vulnerability, their actions against her were particularly egregious.

222.

Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant

John Does have been stubbornly litigious, acted in bad faith, and have caused

Plaintiff unnecessary trouble and expense.

223.

In addition to compensatory, economic, consequential and special damages,

Plaintiff is entitled to punitive damages against each of the individually named

Defendant, in that the actions of each of these individual Defendants have been

taken maliciously, willfully or with a reckless or wanton disregard of the

constitutional rights of Plaintiff.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Against Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does)

224.

Plaintiff realleges and incorporates herein by reference each and every

allegation contained in paragraphs 1 through 223 of this Complaint.

225.

Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does were aware that Plaintiff was on suicide watch during her incarceration.

226.

Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does were all aware of Plaintiff's vulnerable medical state when she was at the Jail.

227.

Despite having this knowledge of her mental health, Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does intentionally verbally abused Plaintiff, during her incarceration.

228.

Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does also intentionally threatened, taunted and sexually harassed Plaintiff, during her incarceration.

229.

Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does conduct toward Plaintiff was extreme and outrageous.

230.

Defendant Martin, Defendant Tanner, Defendant Johnson and Defendant John Does conduct proximately caused Plaintiff extreme emotional distress, as a pre-trial detainee.

231.

Plaintiff's emotional distress was severe.

232.

In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendant, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## COUNT VI
## NEGLIGENT HIRING, RETENTION, TRAINING, AND SUPERVISION
### (Against Defendant Dukes and Defendant Pounds)

233.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 233 of this Complaint.

234.

Defendant Dukes and Defendant Pounds owed Plaintiff a duty to:

a)  Ensure her physical safety;

b)  Report constitutional violations of inmates;

c) Not retain corrections officers after having knowledge of their incompetency;

d) Follow safety and security procedures to ensure that she was housed in a safe manner; and

e) Provide prompt and immediate medical attention for injuries sustained while in their care.

235.

Defendant Dukes and Defendant Pounds violated their duty by failing to provide proper security and use instituted safety protocols and inappropriate circumstance and manner in the following ways:

a) Failing to properly train corrections officers;

b) Failing to provide adequate security for Plaintiff;

c) Failing to provide a safe environment for Plaintiff;

d) Failing to provide adequate medical attention to Plaintiff;

e) Failing to report constitutional violations by corrections officers against Plaintiff; and

f) Maintaining corrections officers after learning of their incompetence.

236.

Plaintiff's injuries were caused by the negligent actions of Defendant Dukes and Defendant Pounds.

237.

The actions of Defendant Dukes and Defendant Pounds in causing Plaintiff's injuries were grossly negligent, malicious, wanton, willful, and done with reckless disregard for Plaintiff's constitutional rights.

238.

At all times relevant, Defendant Dukes and Defendant Pounds were acting under color of state law and within the scope of their employment and authority.

239.

The violations of generally accepted correction's officers custom and practice in this situation and the injuries of Plaintiff were direct and foreseeable results of negligent hiring and retention, grossly inadequate supervisory and training policies and practices on the part of Defendant Dukes and Defendant Pounds.

240.

Defendant Dukes and Defendant Pounds failed to train their employees on how to care for a mentally vulnerable inmate.

241.

Defendant Dukes and Defendant Pounds failed to train their employees on the proper protocols on providing clothing to inmates and basic necessities to inmates.

242.

Defendant Dukes and Defendant Pounds failed to train their employees on the proper protocols on managing inmate privileges.

243.

Defendant Dukes and Defendant Pounds failed to train their employees on the proper protocols on how to report constitutional violations of inmates, caused by corrections officers.

244.

Defendant Dukes and Defendant Pounds failed to train their employees on the proper protocols on how to report constitutional violations of inmates, caused by corrections officers.

245.

Defendant Dukes and Defendant Pounds failed to train their employees on the proper protocols on how to intervene when they witness other corrections officers violating the constitutional rights of inmates.

246.

Defendant Dukes and Defendant Pounds failed to train their employees on other security techniques to keep vulnerable inmates, like Plaintiff, safe.

247.

The negligence and gross negligence of Defendant Dukes and Defendant Pounds entitle Plaintiff to recover compensatory damages for the pain and

suffering incurred by Plaintiff after being tortured, physically and verbally abused, and harassed.

248.

Defendant Dukes and Defendant Pounds acted with malicious, deliberate, willful, wanton and reckless disregard of the rights and privileges of Plaintiff, entitling her to recover punitive damages.

**COUNT VII**
**ATTORNEY FEES AND COSTS**
249.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 248 of this Complaint.

250.

Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, prejudgment interest and costs as allowable by federal law.

251.

In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendant under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays for:

a) Damages based on Defendants' conduct as alleged herein in an amount to be determined at trial;

b) Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

c) Reasonable attorney's fees and expenses of litigation;

d) Trial by jury as to all issues; and

e) All other relief to which Plaintiff may be entitled.

Submitted this 23rd day of June, 2025.

**WATSON LAW LLC**

s/A. Zakiya Watson-Caffe
A. Zakiya Watson-Caffe
Georgia Bar No. 441773
800 Kennesaw Avenue-Ste. 220
Marietta, Georgia 30060
Telephone: (404) 600-1771
Email:  zak@zwatsonlaw.com

*Attorneys for Plaintiff*